**RYAN G. WELDON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**101 E. Front, Suite 401**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**E-mail: Ryan.Weldon@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 23-25-M-DWM** |
| Plaintiff, | |
| vs. | **SENTENCING MEMORANDUM** |
| **SUKHDEV VAID,** | |
| Defendant. | |

1

## INTRODUCTION

The defendant pleaded guilty to Wire Fraud. PSR ¶¶ 1-9. He has a criminal history category I and a total offense level of 24. PSR ¶ 125. This results in a guideline range of 51 to 63 months of imprisonment. PSR ¶ 89. There are no outstanding objections to the PSR, and the United States will not have witnesses at the sentencing hearing.

## ARGUMENT

**Sentencing Analysis:**

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;
- promote respect for the law;
- provide just punishment for the offense;
- afford adequate deterrence to criminal conduct;
- protect the public from further crimes of the defendant; and,
- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; subsection (3) requires the Court to consider the kinds of sentences available; subsections (4), (5), and (6) require the Court to consider the sentencing guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims.

**Recommendation:**

By his own account, Vaid enjoys the "hustling" lifestyle of driving nice cars and travelling to and throughout the United States. PSR ¶ 50. When sentencing Vaid, the Court has before it a rare opportunity to sentence a co-conspirator in an international scheme designed to bilk innocent American victims. Prosecutions for these types of crimes are usually difficult—if not impossible—because individuals like Vaid generally stay outside the jurisdiction of the United States. But the FBI caught Vaid here in a ruse undercover operation when Vaid returned to steal from an elderly woman yet again. A sentence that deters Vaid and others is critical.

The case arose in Montana because in February 2023, Glacier Bank notified the FBI that Jane Doe, a 73-year-old woman, was the victim of a scam. PSR ¶¶ 12-13. The international, India-based scam included fraudsters tricking Jane Doe into giving them $150,000 in cash for "safe-keeping." PSR ¶¶ 13-20. After learning of the scam, the FBI set up a ruse, claiming Jane had an additional

$50,000 for the fraudsters to collect. PSR ¶¶ 20-24. When Vaid and others showed up to collect the money, the FBI arrested them. PSR ¶¶ 22-26. As a result of Vaid and many others, victims were repeatedly scammed across the United States. PSR ¶¶ 33-49. The total loss of the scheme was $1,236,470.00. PSR ¶¶ 52-53.

The actions of Vaid and his co-conspirators were heartless, intentional, and they left innocent victims in shambles. For example, the victim in Montana said the following when discussing the impact of the theft on her:

> You would think as I heal from cancer treatments, I could decrease the isolation I have been having, but the opposite is true. I am ashamed of having been hacked and having been robbed of a large amount of money. [T]here are a lot of people out there who would say, "How could you be so stupid?" I just don't want to be in social situations where someone might know about the situation from the media. I am ashamed to face the world, so I stay at home more.
>
> I feel very violated. It is as though I have been raped—but not by a stranger—by someone who was friendly and who[m] I trusted. As a result, I have crawled into a shell emotionally and don't want to be vulnerable in any way. I don't know who I can safely trust now. I don't feel safe at all.

(Doc. 55-1 at 2.); *see also* PSR ¶ 12.

Another victim offered her view on resolution of the case:

> I know the U.S. justice system often metes out mercy. I don't believe it should here. To hatch this kind of plot that destroys lives—financially and psychologically—is morally bankrupt. These people have no empathy. Could [a defendant's] behavior change? Maybe in small ways if it benefits him—if he receives a lighter sentence or better conditions in prison. No one involved in this scam should be

> allowed to freely roam the streets again.  They should spend the rest of their days behind bars, away from the public, and without phone or internet access.  Protecting innocent people should be the priority.

(Doc. 55-2 at 2.); *see also* PSR ¶ 41.

A different victim explained the current state of her life when this scheme defrauded her:

> My husband died on December 30, 2022.  [T]he months following I have felt lost, extremely vulnerable, unprotected, and stressed.  This scam just added to the extreme stress I was experiencing.  The stress level has remained high and has caused me to lose many nights of sleep.
>
> My bank account got frozen, which resulted in bills not getting paid on time, plus penalty charges, and the necessity to close banking and savings accounts and open new accounts, as well as changing credit cards.
>
> I'm driving a 2007 car, and this loss has prevented me from affording a new car.  The cost of living keeps going up, which doesn't help when on a fixed income.  I'm not sure I will ever have peace of mind again and trust others.  This has cost me more than any monetary loss.

(Doc. 55-3 at 1.); *see also* PSR ¶ 38.  A separate victim also lost her husband, and she explains she would have used the $150,000 to pay for her son's kidney transplant.  PSR ¶ 56.

The ability for instantaneous connection across the world has numerous benefits.  But as this case demonstrates, such technological connectivity can be used for evil.  The henchmen sent to enforce this predatory scheme by collecting and dispersing money included individuals like Vaid.  Deterrence is not only

5

critical for Vaid given his willingness to cross entire oceans to defraud American citizens. Deterrence is also necessary for others who might be tempted to perpetuate and participate in a similar scheme.

Imprisonment is not only warranted—it is necessary.

DATED this 31st day of January, 2024.

                                      JESSE A. LASLOVICH
                                      United States Attorney

                                      */s/ Ryan G. Weldon*
                                      RYAN G. WELDON
                                      Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached memorandum contains 1,186 words, excluding the caption and certificate of compliance.

                                  JESSE A. LASLOVICH
                                  United States Attorney

                                  */s/ Ryan G. Weldon*
                                  RYAN G. WELDON
                                  Assistant U.S. Attorney